Curia, per Johnston, Ch.
There are but three or four questions in this case, the principal of which arises under the following clause in the will of the late Hugh S. BaU.
Should 1 die without leaving issue, I give and bequeath to my beloved wife, the said Anna Elizabeth Ball, all the *76 property, personal and real, that I received, or may receive hereafter, from her father's estate, or from any of her relations, and sources owing to my marriage vnth her, independent of' my oim property, to do with and dispose of as she pleases.
The will was executed the 4th of May 1835, and the testator died in June 1838, leaving his wife surviving, but leaving no issue. The plaintiffs claim, through the wife, the provision thus made for her; and the question is, what is the extent of that provision. It appears from testimony taken by the master that the testator married the daughter of the late Walter Channing, of Boston, who died previously to the marriage. Both husband and wife being minors at the time of their union, which took place the 8th of March 1827, Thomas Barclay, Jun. became their guardian ; and on the 29th of October 1829, eleven days after Mr. Ball attained majority, accounted with him and paid over to him the funds which had come to his hands, amounting, principal and interest, to something over fifty thousand dollars. Subsequently, Mr. Ball' received large sums of money from the estates of his father-in-law and mother-in-law, which, coupled with what he had already received from his guardian, exceeded seventy thousand dollars ; part of which sums, collected by Mr. Ball himself, were paid him before, and part after, the date of his will. The amount paid him by Mr. Barcley, the guardian, arose in the following way. The guardian had received, in cash, from the administrator of Mr. Channing, between the 8th. of October 1827, and the 21st. of July 1829, the sum of $45,608,70; and on the day last mentioned, had received in further payment from the said administrator, a mortgage on one Packwood, then amounting, principal and interest, to $4,500. Retaining the mortgage, the guardian invested $10,885,13, of the cash received by him, in shares in the U. States Bank; and deposited the residue, ($34,723,57,) on interest in the Msssachusetts Hospital, Life Insurance and Trust company. On the 29th of October 1829, as before stated, he delivered the mortgage to Mr. Ball, and assigned the bank shares and deposits to him, and paid him the interest and dividends thereon. On the 31st. of March 1830, Mr. Ball collected the money due *77 on the mortgage, amounting, at that time, principal and interest, to $5,190,70. In the mean time, to wit, on the 5th of Nov. 1829, seven clays after the deposits in the life insurance and trust company were assigned to him, he drew them out, and redeposited them, with a slight addition to make the round sum of $35,000, in his own name. Of this latter sum he drew out $10,000, on the 20th of April 1832, (before the date of his will;) leaving $25,000 on deposit. On the 20th of May 1835, sixtéen days after the will, he drew out the whole of the said $25,000. This sum he invested in various stocks, which he changed, from time to time, by sale and the purchase of others, receiving the dividends, as they accrued, until his death. A book kept by him was given in evidence ; in which, under the head memorandums of bank stocks, and their value when purchased, are many entries of stocks, all purchased after the date of the will: beginning with an entry of stock in the New Orleans Commercial Bank, purchased the 1st of July 1835. The statements are continued through several pages, and the stocks, when disposed of, are marked sold, and notice is taken of the manner in which the money was reinvested. The investments are always in stocks, except $1250 paid for furniture in Newport, and other stocks (price not mentioned,) invested in a house in Newport. And on every page is a remark, subscribed by the testator, to this effect: The stocks enumerated in this page belong to my wfe, though they stand in my name. The last entry of this description stands at the head of page 11, and is as follows: Dec. 12, 1836. The stocks enumerated in this page belong to the property of my wife, Anna E- Ball, though standing in my name, H. S. Ball. At the end is added: — Also the house in Newport, cost $8,000. These entries appear to have been made, from time to time, as the stocks were purchased, sold and replaced. The only stocks remaining unsold at the testator’s death, are: 100, shares in the American Life Insurance and Trust company, of Baltimore, purchased June 1st, 1836; — 25 shares in the Bank of Charleston, purchased March, 9th 1836; — and 103 shares in the Farmer’s Loan and Trust company, of New York, purchased August 16th 1836.
The Chancellor, holding the provision made for Mrs. *78 Ball to be specific, and seeing that not a vestige remained in specie of all that the testator received in consequence of his marriage, felt himself constrained to reject the evidence shewing its amount and value. On the other hand, upon the authorities quoted by him, he admited the book kept by the testator, as evidence that the stocks remaining un-disposed of constituted the property to which the testator intended to refer in his will. The appeal makes the question whether either of these classes of evidence is admissible in the case before us.
It must be allowed that the view taken by the Chancellor, in his judgment, is very strong: and it has been supported here with much ingenuity and learning, by the defendants’s counsel. But it appears to us that principles well settled in law and founded in reason; principles indispensable to the execution of testaments according to their true intention, necessarily conduct to a different result. The distinction between the two classes of evidence before mentioned, seems to be this : The one is intended to ascertain the thing actually described in the will; the other is intended to shew by extrinsic evidence that the testator intended by his will to refer to a thing which his will does not describe. The one is employed in finding a subject for the operation of the will; which subject, when found, is taken hold of and operated upon, by the very terms of the will itself. The other is employed in proving an intention on the part of the testator different from that expressed by him as testator; to wit, that he intended that the terms of his will should embrace a subject matter which they do not describe. This latter kind of evidence is wholly inadmissible. It sets aside the will, and substitutes extrinsic evidence in its place.
If cases can be found countenancing such a practice, they are as much opposed to the current of decisions as to principle and to reason. The cases upon the authority of which the book kept by the testator was admitted, seem to us to be of doubtful application to the point before us; if, indeed, their authority has not been too much shaken to leave them for safe guides, even within the narrow limits of the particular subjects upon which they were decided. Druce vs. Denison (6 Ves. 385,) was a case where extrinsic evi *79 dence was admitted to prove that by the words my personal estate, the testator meant personal estate subject to a power: but this testimony was received for the specific purpose of raising an election, and the decision applies only to cases of that description. (See Wigram’s examination, 39, prop. 2, pi. 48, 49, 3d Lond. edition ; and Sug. on Powers, 385, 3d. edit.) It is evident from his observations, as reported, that Lord Eldon admitted the evidence, even for the purpose of raising a case of election, with great hesitation — as bowing to authorities which he felt it his duty to follow, rather than as'being satisfied that, upon the rules of evidence, as formerly understood, the proof could be received. Besides, “it may be questioned,” says Mr. Wigram, “whether Lord Eldon has not since repudiated the decision attributed to him by the report of that case in Vesey. See,per Lord Eldon in Doe exdem. Oxenden vs. Chichester, 4 Dow. 65; and see Blomart vs. Player, 2 Sim. and Stu. 597; and Dummer vs. Pitcher, 2 Myl. and K. 262.” Pulteney vs. Darlington, (1 Bro. Ch. C. 223,) was much doubted by Lord Eldon in Druce vs. Denison. But whatever opinion may be formed of the correctness of the point decided, it forms no precedent for the admission of the book kept by Mr. Ball, as declaration of the meaning of his will. For the purposes of this case, the case of Pulteney vs. Darlington may be briefly stated thus : Lord Bath, as executor of Henry Guy, being in possession of money and stocks which were directed to be laid out in the purchase of real estate, to be settled upon Geni. Pul-teney, remainder over, (fee. mortgaged certain real estate to the General as security for his, Lord Bath’s, laying out said money and stocks in lands, and settling them to the uses of Guy’s will. Those entitled in remainder having all died, and all the uses having centred in Geni. Pulteney, Lord Bath died, leaving a last will by which he gave his whole estate, real and personal, to the General, and appointed him his executor. Then Geni. Pulteney died, leaving his real estate, by particular description in his will, ty Mrs. Frances Pulteney, who was his heir and the heir general of the family. His money, securities for money, and personal estate, he directed to be laid out in lands, to be settled on Lord Darlington, whom he appointed execu *80 tor. The bill was brought to have the personal estate of Guy, formerly in the hands of Lord Bath, laid out in lands, to be conveyed to Mrs. Pulteney in fee; upon the principle that money directed to be laid out in lands, must, in this Court, be considered as land ; and that the personalty belonging to Guy’s estate, which had come to the hands of Geni. Pulteney, must be regarded in the light of realty, and did not pass, under the description of his personal estate, to Lord Darlington. The question was, whether the fund received, in the shape of personalty, by the Geni, who was the only person interested in the execution of the direction to lay it out in land, passed, as personalty, under his will, or retained the impression of realty given to it by the will of Henry Guy, and was liable to be invested in land for the benefit of Mrs. Pulteney, who was the heir as well as devisee of Geni. Pulteney. There were two points in the case: 1st. whether the General had not, by his acts, elected to take the personal fund, as personalty, in satisfaction of the interests he had under Guy’s will: — and under this head the evidence spoken of by the Chancellor was offered: — the 2d. question was, whether the fund was not, in the hands of Geni. Pulteney, at home, as the cases express it, (see 1st. Bro. Ch. C. 238, note,) and liable to go according to the quality in which it was left by him at his death. Lord Thurlow said, “where a sum of money is in the hands of one, without any other use but for himself, it will be money, and the heir cannot claim. But, whether that is clearly so or not, circumstances of demeanor in the person, (even though slight,) will be sufficient to decide it.” “I have no doubt, upon all the cases, that the slightest intention to take it as money, would make it so.” “It was argued that evidence dehors the will ought not to be admitted in the construction of it. But the question does not turn upon the toill. The question principally is, what presumption arises as to his intention from the acts he has done.” “I am of opinion with Lord Bathurst, that the money, under the circumstances, continued money.”
It appears pretty clearly from this statement, that the evidence was not admitted to enlarge or otherwise control the words of the will: — but to rebut an equity claimed *81 by Mrs. Pulteney to take a subject matter of bequest clearly within the testamentary description, out of the range and operation of the will, by imputing to it a new and merely ideal character. The case is, therefore, no precedent lor admitting evidence for the purpose of extending the wTords of a will from things described to things not suiting to the description. The fault of the evidence ad-, mitted in the present case is, that it does not ascertain a subject for the operation of the will suiting to what the will describes. The evidence introduces property said to belong to the wife, (which, by the way, was in no sense her property:) the will calls only for property received by the husband from the wife’s relations. These stocks were never received in that way. They may be the result of the husband's speculations and labors, based upon capital which was so received. But even here the evidence fails. It is not declared in the memorandums that they are the product of what the husband received. Not only does the evidence not declare that the stocks are what the husband had received ; or that they constitute all that he received; or that they are the product of the property received: — • the fact is manifest that they had no existence at the date of the will, and could, by no possibility, have been referred to in the will as that which the husband had then received. They come to his hands after the execution of the instrument; but they do not come within the description of property received from the wife’s relations; and, therefore, in no view that can be taken, do they fall within the operation of the will. If this memorandum book had never existed, it is not easy to perceive why the particular stocks enumerated in it should be selected as falling within the description or meaning of the testator ; any more than any other property in which he may have happened to vest the funds received by him in consequence of his marriage. And if not, then it is not by virtue of what the testator has said in his will, but by reason of what he has said out of it, in the book entries, that it is to operate specifically on this property. What is this but to make the book, and not the will, the real testament 1 To make the evil of admitting this evidence more palpable: is it not apparent that the will might have been made to extend to almost *82 any other property in the custody of the testator as well as to these stocks, and to a larger or smaller amount of property, according to the entries which accident or caprice might have led the testator to make'? If the testator had stopped at his entries of 1835, the stocks there enumerated would have constituted the exclusive subject of bequest: or if he had been cut off at the first entry for 1836, that would have determined the operation of his will: so that his testamentary intention would have varied from day to day, although the words in which he had expressed it remained unchanged. This, it is conceived, would subvert the soundest and best established principles. It is said, (and correctly,) says Mr. Wigram,* that the statute, by requiring a will to be in writing, precludes a Court of law from ascribing to a testator any intention which his written will does not express; and, in effect, makes the writing the only legitimate evidence of the testator’s intention. “No will is within the statute which is not in writing: which is as much as to say, that all that is affectual and to the purpose must be in writing, without seeking aid of words not written.” Brett vs. Rigdon, Plow. 340; and see 2 Vern. 625; Hobart, 32; and Hiscocks vs. Hiscocks, Wigram, Pl. 183. What is said here respecting extrinsic parol evidence, is as true, on principle, of extrinsic written evidence. What the intention of the testator was, in purchasing and keeping an account of these stocks, or in designating them as stocks of his wife, we can only conjecture ; nor is it necessary to ascertain it: the duty of the Court being to discover and execute the intention expressed in the will, and not in the memorandums. But it may well be conceived that the testatator was engaged in accumulating convenient means for satisfying the legacy left to his wife; and if he had lived he might have made ample provision for doing so. Be his object what it might, the book cannot be admitted to declare the intention of his will: nor is it at all certain that he desired that it should; since in his memorandums there is no reference whatever to his will.
*83 The next question is, whether the evidence to shew the nature and extent of the property received by the testator, in consequence of his marriage, was admissible. I do not hesitate to express the beleif, that no case can be found, where evidence to ascertain the existence of a subject matter, suiting to the description contained in the words of a will, was ever rejected. Such evidence is absolutely indispensable to the execution of all testamentary papers; and is habitually and uniformly resorted to. Nor is it confined to wills; it is received in every case, whatever be the form of the instrument. The identity of the thing granted or devised, can be ascertained in no other way. The identity of the person to whom the gift or conveyance is made, is ascertained by precisely the same kind of evidence. Thus, where a testator or grantor gives to his eldest son, the tract of land or the slave which he bought from A., and the conveyance becomes the subject of dispute, how is the dispute to be determined but by proof that the claimant is or is not the eldest son of the benefactor, and that the land or slave falls within the description 1 And if the will be not of a specific thing, but of something to be ascertained by some test contained in the instrument, it can only be determined by evidence whether the subject matter conforms to that test. Here, the testator declares his intention to give all the property, real and personal, that he had received or might afterwards receive, &c. Whatever falls within the description oí property, real or personal, and was at any time received by him from the sources indicated in his will, must pass under the will, or his intention will be defeated. Nothing can be forced into the legacy which is not included within the legal import of the word property; nor any property which the testator did not receive from his wife’s relations, either before or after the date of his will; but all the property thus received is clearly given.
Property is a general term to designate the right of ownership ; and includes every subject, of "whatever nature, upon which such a right can legally attach. It is not necessary that the subject of it should be either lands, goods or chattels; for it extends to money and securities. For the import of the term, see 6 Bin. 98 ; Cowp. 299; 14 East, 370; Pub. Laws, 147. As to its popular meaning, we *84 speak familiarly of a man of property, and the value of his property, without, at all, distinguishing whether it consists in lands, slaves, stocks or money. If any stress is laid upon the words personal and real, used by the testator; the employment of these words lays no just ground for supposing that he thereby intended to restrict — as the words themselves, in their legal import, do not restrict, the property to things tangible. They included every species of property or right. And when we see that the testator bequeaths not only what he had already received, — the nature of which he might know ; but, also, all the property he might afterwards receive from any relation of his wife, — the precise nature of which he could not possibly foretell, — we have reason for supposing that these words, real and personal, were superadded to the word property, not for the purpose of restriction, but by way of giving it its most enlarged signification, and to indicate his intention that all property, of whatever description, thus received, should pass under the bequest. What the testator received before the date of his will, must, in the absence of an enumeration of it by him, be ascertained by evidence; and what he received afterwards, and could not enumerate, can be ascertained in no other way.
It has been argued, that this legacy is specific ; and that, therefore, the evidence cannot be admitted. But in such a case as this, — where the bequest is in terms of general description, — it is a.perversion of the proper order of inquiry to discuss the class or grade of the legacy, before the subject matter of it is ascertained. Before it can be pronounced that a legacy is specific, it must be ascertained what is given. Whether a legacy is specific or not, must, necessarily, depend upon the nature of the thing referred to and described in the will. If the thing be capable of individuality, as a ring or a picture ; or if it be an assemblage of things, as a library or a cabinet; or something capable of being separated by sensible distinctions, as the property on a particular estate; in all such cases, the descriptions in the will set forth with distinctness the subject of bequest, and make it specific. But this is only because specific things alone can answer to the description given. But where, as in this case, the terms of the will are general, it is impossible to determine whether the bequest is specific, *85 or otherwise, until you ascertain the nature of the things falling within the general description; — and, then, the legacy is specific, general or pecuniary, according to the nature of the things themselves. It may be safely affirmed, I think, that whether a bequest couched in general terms is specific or otherwise, depends on this; if the things falling within the terms, when enumerated, (or- if they had been enumerated by the testator,) are in their nature specific, then the legacy is specific ; otherwise it is not. As the testator here has not enumerated the property he had received, and could not enumerate what he should after-wards receive, how are we to know what he did receive, until we learn it frorn the evidence 1 Suppose he had received a family of slaves at one time from one of his wife’s relations, can there be any doubt that they would pass, specifically, under this will 1 Suppose he received a sum of money, at a different time, from another relation, is there any reason why this should not pass, as a pecuniary legacy'! Now, the fact that he had received property from different family connexions at different times, and might receive other property, the nature of which was necessarily unknown to him, from various other relatives, at various, times, was the very reason which led the testator to employ the general terms used by him in his will; and no reason is perceived why the character of his legacy should' be limited by the Court, when he did not limit it himself. The intention here was to give what the testator received, or should receive. If what was received was in part specific and in part pecuniary, the will, .in fulfilment of the testator’s expressed intention, must operate accordingly; but in order to ascertain, this, the evidence must be heard. This evidence establishes that every dollar received by the testator himself, and by his guardian for him, was in money. The only apparent exception -was Packwood’s mortgage ; but that was received by the guardian in place of money, and was so passed over to him. The effect is that this is a pecuniary legacy for the amount received ; which is to be estimated by excluding from the computation all the income and interest which accrued after the receipt by the guardian or by the testator, as the case may be. The capital sums received are alone to be accounted for.
*86 Let it be conceded, however, that the words property, personal and real, in their primary meaning, include only lands, goods and chattels, as is intimated in the decree, upon the authority of Stucky vs. Stucky, (1 Hill C. R. 309,) still it will not be doubted, that in a secondary sense, they extend to money. Then, the cases quoted by Mr. Wigram, and to which I refer, sustain his third proposition, (page 42,) that where a testator has used the words in which he has expressed himself, in their strict and primary sense, but his words, so interpreted, are insensible with reference to extrinsic circumstances, a Court of law may look into the extrinsic circumstances of the case, to see whether the meaning of the words be sensible in any secondary sense, of which, with 'reference to these circumstances, they are capable. If one who had in fact received nothing but money from a particular source described by him in his will, should bequeath theproperty he had received; his intention could not be that the legatee should take no benefit ; — but must be that he should take that kind of property which he, himself, had received. Now this is what Mr. Ball has done; and his legacy is, therefore, pecuniary. In receiving this testimony, and giving this' construction to the will, we are placing ourselves, (to use the words of Mr. Wigram, p. 64, pi. 76,) in the situation of the testator, and leaving the words of the will to their natural operation ; (see, also, his 5th proposition, and the cases cited, with his remarks and references.)
The other grounds of appeal were not argued, but appear to be plain. The ground taken by the executors seems to be well founded ; and must be sustained. That taken by Elias O. Ball, is also well founded. The annuity of Mrs. Taveau is not charged by the will upon the crops; and the provision for its payment should be made out of the residue of the estate, before resorting to them.
Let the decree be reformed according to the foregoing opinion; afid let an account be taken of the different legacies; deducting such payments as may have been made, by the executors, thereon ; and let an inquiry be made as to the means of discharging them, and wíiat provision should be made therefor; with leave to the master to report any special matter ; and with leave to the parties to appiy *87 for further directions; and also, for the sale of any property of the estate which it may be necessary to sell, for the more easy execution of the testator’s will; for which purposes let the cause be remanded to the Circuit Court.
Petigru, Legare and Seldler, for complainants.
Mazyck, Memminger, and DcSaossure, contra.
Johnson and Harper, Chancellors, concurred.

Wigram’s examination of the rules of law, respecting the admission of extrinsic evidence, in aid of the interpretation of wills. 3d. Lond. edit. p. 8, Pi. 9: and see same author p. p. 132, 146; Pl. 177, 182.